PER CURIAM.
Richard V. Fletcher (the defendant) seeks review of the trial court’s order summarily denying his motion for post-conviction relief, filed pursuant to Florida Rule of Criminal Procedure 3.850. We affirm as to all claims except claims two and five (addressed together) and claim four.
The defendant was charged with two counts' of lewd or lascivious molestation. He was convicted as charged by a jury.
*1012 In claim two of his post-conviction motion, the defendant alleged that defense counsel was ineffective for failing to call two key defense witnesses at his trial. According to the defendant, both witnesses would have provided testimony that would have established that the victim’s mother induced the victim to fabricate the allegations of lewd and lascivious molestation against him so that the mother could engage in a relationship with the defendant’s best friend, Milan Baldwin. More specifically, the defendant’s motion alleged that Rose Patzkie was willing to testify that, on the night before the allegations against the defendant were made, the victim’s mother told Patzkie (who was her best friend), that she wanted to be with Baldwin because he was hot. The motion alleged:
Ms. Patzkie willingly would have testified that [the victim’s mother] told her of the allegations on the night she received the phone call to come pick her and the kids up, from the residence of the Defendant and [the victim’s mother], but no [sic] otherwise heard the allegations from the alleged victim, and that for such allegations to be made of a child that age, there was no symptoms indicating psychological trauma, being upset, depressed, afraid or shell shocked for any suspicion of truth. So by her witnessing the conversation and the intimacy between [the victim’s mother] and Mr. Baldwin the night before and lager [sic] the injunction with his address of Exhibit “C”, she suspected a scandal to have Defendant locked up for false allegations to get him out of the way and ended their friendship of 5 yrs.
The motion further alleged that the other key defense witness was Clifton Manning. The motion alleged Manning would have testified as follows:
Clifton Manning was willing to testify to the aftermath immediately following the separation of injunction [sic], once he found about the affair, Mr. Baldwin told him about a sexual relation going on between the two of them, and he didn’t have to worry about the Defendant anymore for what he allegedly did to his daughter. Mr. Manning will testify that Mr. Baldwin confided in him that “she was crazy and it’s her not him.” Mr. Manning is a witness who will testify that [the victim’s mother] told him that she fell in love with Mr. Baldwin when she first laid eyes on him, and when Mr. Manning found out about Mr. Baldwin’s address in injunction separation order, he confronted [the victim’s mother] about the affair and the innocence of Defendant, igniting her temper and threatening Mr. Manning with a “crow bar” when he accused her of setting the Defendant up for Molestation charges. Stating that if he didn’t believe her side to stay away from the house.
According to the defendant, defense counsel had originally placed these two witnesses on the witness list; however, counsel ultimately decided not to call them at trial, informing the defendant “that their testimonies were irrelevant.” The defendant contended that, had these two witnesses testified at trial, they would have provided the jury with evidence of the victim’s mother’s plan to get the defendant out of the way so she could be with Baldwin, thereby changing the outcome of the proceedings. In rejecting this claim, the trial court ruled:
This claim lacks merit. First, after the jury was sent out to deliberate, the Court asked Defendant if he was satisfied with counsel’s work in the case and whether she did everything he wanted her to do. Defendant responded affirmatively. See trial transcript, pages 198-199. This is sufficient to refute his claim that he wanted counsel to call witnesses to establish some sort of con *1013 spiracy on the part of the victim’s mother to frame him for molesting her daughter. Furthermore, as Defendant acknowledges, counsel expressed the belief that the testimony of Ms. Patzkie and Mr. Manning would not be relevant. The decision not to call a particular witness is presumed to be reasonable and strategic and is virtually unchallengeable. Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defendant can rebut this presumption only by establishing that no competent counsel would have made the same decision. Mendoza v. State, 81 So.3d 579, 581 (Fla. 3d DCA 2012). However, he cannot do so. First, it is questionable whether testimony that [the victim’s mother] was having an affair with Defendant’s friend would have been admissible. Even if it had been, there is no reasonable probability it would have changed the outcome of the trial, for the reasons set forth in the State’s closing argument: the victim was not Defendant’s biological daughter and [the victim’s mother] was gainfully employed; she did not need to concoct false allegations to “get him out of the way.
As for claim five, the defendant’s motion alleged that defense counsel was ineffective for failing to present the theory that the victim’s mother was motivated by “personal interest and bias” to induce the victim to fabricate molestation charges “to get the defendant out of the picture [so she could] be with his friend, Milan Baldwin, who she was having an affair with.” The motion alleged:
Counsel failed to investigate every form of documents to verify these facts by Exhibits, of [the victim’s mother’s] motives of personal interest and bias, challenging the prosecutor’s argument that the marriage was fine through the testimony of [the victim’s mother’s] best friend, Rose Patzkie, on behalf of the Defendant, about the night before allegations were made Rose, [the victim’s mother], and Mr. Baldwin went to a club where [the victim’s mother] told Rose that she wanted to be with [Baldwin].
Counsel argued that the mother induced the alleged child victim to lie, but failed to present the agreed “Defense Theory” of her true motive, hiding the affair with Defendant’s friend, damaging his chances of a fair trial, restricting that right to confrontation, making it impossible to conclude “beyond a reasonable doubt” the error was harmless.
In rejecting claim five, the- trial court ruled:
This claim lacks merit for the reasons set forth in the ruling on Ground Two. It is questionable whether testimony that [the victim’s mother] was having an affair with Defendant’s friend would have been admissible. Even if it had been, there is no reasonable probability it would have changed the outcome of the trial, for the reasons set forth in the State’s closing argument: the victim was not Defendant’s biological daughter and [the victim’s mother] was gainfully employed; she did not need to concoct false allegations to “get him out of the way.”
Destiny Clarke, Defendant’s cousin, provided testimony that could have led the jury to conclude that the victim had a motive to lie. First, she testified that the victim did not like being disciplined by Defendant and said, “oh, I can’t stand him.” She also testified that Defendant’s son asked the victim why she said things about his dad, and the victim responded that she had to or her mother would be mad at her. However, the victim’s response to the latter question does not necessarily prove that her mother had a motive to get her to lie. *1014 It is equally susceptible to the interpretation that she had told her mother about the abuse .and that her mother would be upset with her for not talking to the police.
We reverse the trial court’s summary denial of claims two and five and remand these two claims for further consideration. It is unclear from the record why defense counsel would not have sought to argue that the victim’s mother influenced the victim to assert the lewd or lascivious molestation allegations based on her interest in Baldwin when the defense theory at trial was that the victim’s mother put the victim up to making the molestation allegations in order to get the defendant “out of her life and out for good.” In that regard, defense counsel’s argument during closing was as follows:
Now, I agree 100 percent with the State. I don’t think [the victim] came up with this on her own or that it’s because of spankings or whatever. I think her mother came up with it. And her mother told her what to tell. Why? Because her mother was tired of Mr. Fletcher. She wants him out of her life and out for good. And out of her children’s lives.
Despite these assertions, the remainder of defense counsel’s closing argument failed to elaborate on why it was that the victim’s mother wanted the defendant “out of her life and out for good.” Through his second and fifth claims, the defendant alleged that the reason was that the victim’s mother wanted him out of her life so that she could be with Baldwin, and the defendant established that defense counsel was aware of these two potential witnesses by asserting that they originally appeared on the defense witness list.
We reject the trial court’s conclusion that the defendant waived these claims for relief by informing the trial court that he was satisfied with defense counsel’s representation in the case because the trial court’s inquiry was not specific enough to conclude that the defendant should have taken the opportunity to advise the trial court that, in his opinion, defense counsel should have called the two witnesses. This conclusion is buttressed by the defendant’s assertion that defense counsel told him that the two witness’s testimony would have been “irrelevant.” Compare Law v. State, 847 So.2d 599, 600-01 (Fla. 5th DCA 2003) with McIndoo v. State, 98 So.3d 640, 641-642 (Fla. 4th DCA 2012). See also Rollins v. State, 997 So.2d 1288, 1289 (Fla. 4th DCA 2009).
Additionally, the trial court erred in concluding that there was no reasonable probability that the testimony of Patzkie and Manning would have changed the outcome of the trial based on the conclusion that “the victim was not Defendant’s biological daughter and Ms. Connolly was gainfully employed; she did not need to concoct false allegations to ‘get him out of the way’ ” because, in reaching this conclusion, the trial court was essentially substituting its own conclusions for possible conclusions that could have been reached by the jury. We have no way of knowing how the jurors would have reacted if they had been presented with evidence supporting the defendant’s claim that the victim’s mother was motivated to persuade the victim to make false allegations based on her desire to be with Baldwin. Accordingly, the trial court’s summary denial of claims two and five is reversed.
In his fourth claim for post-conviction relief, the defendant alleged that defense counsel was ineffective for failing to cross-examine the victim regarding her prior inconsistent statements, claiming that such questioning would have discredited her trial testimony. Although inart-fully pled, the defendant’s contention was that the victim testified during her deposi *1015 tion that he never showed her his penis and never made her touch his penis; however, during trial, the victim testified to the contrary. The defendant alleged that defense counsel was ineffective for not addressing this inconsistent testimony during the victim’s cross-examination. In denying this claim for relief, the trial court concluded:
Arguably, counsel could have used the victim’s deposition statement to impeach her testimony that Defendant made her touch his penis. However, [the victim’s mother] stated in her own deposition that the victim described Defendant’s penis.... This Court concludes there is no reasonable probability that the outcome of the trial would have been different if counsel had impeached the victim with her deposition statement.
We disagree.
The victim’s deposition testimony could have constituted persuasive impeachment evidence. While the State may have been able to offer the mother’s testimony during the trial as a means of rehabilitating the victim’s testimony, any such potential testimony from the mother would not have served to conclusively refute the defendant’s post-conviction claim. Accordingly, the trial court’s summary denial of the defendant’s fourth claim for relief is also reversed.
AFFIRMED in part; REVERSED in part; and REMANDED for further proceedings.
LAWSON, C.J., PALMER and COHEN, JJ., concur.